**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>MOON GROUP, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 21-11140 (JKS)<br><br>(Jointly Administered) |
| DON A. BESKRONE, CHAPTER 7 TRUSTEE OF MOON GROUP, INC., *et al.*,<br><br>Plaintiff,<br>v.<br><br>KORE CAPITAL CORPORATION,<br><br>Defendant. | Adv. Pro. No. 21-51176 (JKS) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**<u>MOTION FOR LEAVE TO FILE INTERLOCUTORY APPEAL</u>**

**ASHBY & GEDDES P.A.**
Ricardo Palacio (DE Bar No. 3765)
Gregory A. Taylor (DE Bar No. 4008)
500 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware 19899
Tel: 302-654-1888
Email(s): RPalacio@ashbygeddes.com
GTaylor@ashbygeddes.com

*Counsel to Don A. Beskrone, as Chapter 7 Trustee of Moon Group, Inc., et al.*

**SILVERANG, ROSENZWEIG & HALTZMAN, LLC**
Philip S. Rosenzweig
William C. Katz
Woodlands Center
900 E. 8th Avenue, Suite 300
King of Prussia, PA 19406
Tel: (610) 263-0115
Email(s): PRosenzweig@sanddlawyers.com
WKatz@sanddlawyers.com

*Special Litigation Counsel to Don A. Beskrone, as Chapter 7 Trustee of Moon Group, Inc., et al.*

[1] The Debtors in these chapter 7 cases, along with the last four digits of each of the Debtors' respective federal tax identification numbers, are as follows: Moon Group, Inc. (7484); Moon Landscaping, Inc. (3442); Moon Site Management, Inc. (0250); Moon Wholesale, Inc. (3232); Rickert Landscaping, Inc. (3988); and Moon Nurseries, Inc. (8411). The Debtors' headquarters and mailing address was 145 Moon Road, Chesapeake City, MD 21915.

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ ii

**PRELIMINARY STATEMENT** ........ 1

**FACTUAL AND PROCEDURAL HISTORY** ........ 2

**LEGAL ARGUMENT** ........ 7

A. Standard of Review ........ 7

B. Controlling Question of Law ........ 7

C. There is Substantial Ground for Difference of Opinion ........ 12

D. Interlocutory Appeal Would Materially Advance the Litigation ........ 13

**CONCLUSION** ........ 14

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Grisaffi v. Dillard Department Stores, Inc.*,
43 F.3d 982 (5th Cir. 1995) ........ 11

*In re AE Liquidation, Inc.*,
451 B.R. 343 (D. Del. 2011) ........ 7

*In re Bailey Tool & Mfg. Co.*,
No. 16-30503-SGJ-7, Adv. No. 16-03025-SGJ, 2021 Bankr. LEXIS 3502,
2021 WL 6101847 (Bankr. N.D. Tex. Dec. 23, 2021) ........ 9, 10, 11, 12

*In re BSA*,
2021 U.S. Dist. LEXIS 58837, 2021 WL 1174573 (D. Del. March 29, 2021) ........ 7

*In re Del. & Hudson Ry. Co.,*
96 B.R. 469 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989) ........ 7

*In re Essar Steel Minn. LLC*,
2022 U.S. Dist. LEXIS 128522, 2022 WL 2828849 (D. Del. July 20, 2022) ........ 13

*In re Maxus Energy Corp.*,
611 B.R. 532 (D. Del. 2019) ........ 7

*In re Paragon Offshore PLC*,
2020 U.S. Dist. LEXIS 62552, 2020 WL 1815550 (D. Del. Apr. 9, 2020) ........ 13

*In re TK Holdings*,
2021 U.S. Dist. LEXIS 161579, 2021 WL 3796878 (D. Del. Aug. 26, 2021) ........ 13

*In Re W.R. Grace & Co.*,
285 B.R. 148 (Bankr. D. Del. 2002) ........ 12, 14

*K.M.C. Co. v. Irving Tr. Co.*,
757 F.2d 752 (6th Cir. 1985) ........ 9, 10, 12

*Katz v. Carte Blanche Corp.*,
496 F.2d 747 (3d Cir. 1974) ........ 7, 12, 13

*Marland v. Safeway, Inc.*,
65 Fed. Appx. 442 (4th Cir. 2003) ........ 10

*Parker v. Columbia Bank*,
604 A.2d 521 (Md. Ct. Spec. App. 1992) ........ 11

*Quality Automotive Co. v. Signet Bank/Maryland,*
775 F. Supp. 849 (D. Md. 1991) ........ 9, 10, 12

**Statutes**

11 U.S.C. § 632 ........ 6

18 U.S.C. § 1701 ........ 5

18 U.S.C. § 1708 ........ 5

28 U.S.C.§ 157 ........ 7

28 U.S.C. § 1292(b) ........ *passim*

28 U.S.C. § 158(a)(3) ........ 7

**Other Authorities**

La. Civ. Code Ch. 8, Sec. 1, Art. 1983 ........ 11

Don A. Beskrone (the "Plaintiff"), as Chapter 7 Trustee of Moon Group, Inc. ("MGI"), Moon Nurseries, Inc. ("MNI"), Moon Landscaping, Inc. ("MLI"), Moon Site Management, Inc. ("MSM"), Moon Wholesale, Inc. ("MWI"), and Rickert Landscaping, Inc. ("Rickert" and collectively with MGI, MNI, MLI, MSM and MWI, the "Moon Entities"), by and through his undersigned counsel, submits this memorandum of law in support of the Motion for Leave to File Interlocutory Appeal from the Bankruptcy Court's September 30, 2022 Order and Opinion granting judgment on the pleadings to defendant KORE Capital Corporation (the "Defendant" or "Kore") on Counts I-VI and VIII of the Amended Complaint, and limiting the scope of Count VII of the Amended Complaint.

## PRELIMINARY STATEMENT

The Court's Opinion and Order ignores the special circumstances of this case. Instead of acknowledging the unique chokehold exerted by lenders extending lockbox lines of credits (as defined hereinbelow), this Court has treated the Moon Entities' lending agreement like any other lending relationship. Instead of following the decisions of the only other courts to address the issue and imposing an obligation on the lender to give the borrower notice and opportunity to refinance prior to exiting the lockbox arrangement, the Court has wholly embraced Kore's position that the contract vests Kore with *unfettered* discretion to make or refuse an advance unconstrained by the implied covenant of good faith and fair dealing. Plaintiff submits that the Order and Opinion present a compelling controlling question of law as to the appropriate legal standard applicable to lender advances under lockbox lines of credit. There is substantial grounds for difference of opinion when answering this question, and resolution at this stage will promote finality and thereby materially advance the instant litigation. For these reasons, Plaintiff respectfully requests that this

Honorable Court grant the instant motion for leave to file an interlocutory appeal from the Court's September 30, 2022 Order and Opinion.

## FACTUAL AND PROCEDURAL HISTORY

The Moon Entities operated several business lines: a wholesale tree and shrubbery nursery; a commercial landscape maintenance and site management company; and a landscape construction business. Due to the seasonal and cash-intensive nature of the Moon Entities' businesses, the Moon Entities required a substantial line of credit to ensure adequate cash flow. Kore provides lines of credit secured primarily by accounts receivable, as well as "factoring" loans. Kore is not well capitalized, and lacks the capital to independently fund the loans it makes. As a result, Kore borrows capital from other lenders, earning a profit from the margin between the rate at which it borrows these funds and the higher rate at which it lends them.

Moon has two existing loan facilities secured by certain of the Moon Entities' real and personal property. In order to help the Moon Entities meet their cyclical cash flow needs, they obtained an additional line of credit from Kore, secured by the Moon Entities' accounts receivable. On May 15, 2020, the Moon Entities entered into this revolving accounts receivable financing facility with Kore, documented by a Revolving Credit and Security Agreement, under which Kore advanced funds to the Moon Entities based upon the Moon Entities' invoices to customers for services rendered (as amended, modified or supplemented, the "Line of Credit"). [Adv. D.I. 12-1]. The Moon Entities and Kore subsequently entered into a Loan Modification Agreement on September 16, 2020, a Forbearance/Loan Modification Agreement on December 30, 2020, a Second Loan Modification Agreement on May 24, 2021 and a Waiver/Loan Modification Agreement on June 28, 2021. The amount that the Moon Entities were permitted to draw from the

Line of Credit is based upon a percentage of the Moon Entities' then-outstanding accounts receivable.

One of the Moon Entities – Moon Landscaping, Inc. – was a party to a master service agreement with StoneMor Operating, LLC (the "StoneMor Agreement"), whose term would have extended through December 31, 2024.[3] [Adv. D.I. 12-2]. StoneMor Operating, LLC is the operating affiliate of StoneMor, Inc. (collectively, "StoneMor"). StoneMor is a leading owner and operator of cemeteries and funeral homes, and, until Kore destroyed that relationship, was the Moon Entities' largest customer. StoneMor is also a creditor of the Moon Entities. Under the StoneMor Agreement, MLI provided ground maintenance services to StoneMor cemeteries in Pennsylvania, Maryland, Virginia and the District of Columbia. [Adv. D.I. 12-2]. Kore initially agreed to advance to the Moon Entities eighty percent of the receivables for customers other than StoneMor, but only thirty-five percent of the StoneMor receivables. [Adv. D.I. 12-1].

The Line of Credit contemplates that the Moon Entities' receivables will be paid by the Moon Entities' customers directly to Kore (akin to a lockbox arrangement), and that funds would then be advanced to meet the Moon Entities' short-term cash flow needs. [Adv. D.I. 12-1]. **Thus, the Moon Entities' ability to pay its debts as they came due was wholly dependent upon Kore complying with its duty to make advances under the Line of Credit in good faith**. However, it became readily apparent to the Moon Entities and Kore that the loan facility's credit limit did not provide sufficient funding. The Line of Credit was amended several times, both by formal amendment, and through the parties' mutual custom and actual practice. Meanwhile, Kore was

[3] During the pendency of this bankruptcy, the StoneMor Agreement was, first, scaled back, and then, ultimately, terminated.

slow in providing advance funds, and the Moon Entities risked defaulting on their payroll obligations.

In or about July 2021, Kore demanded that the Moon Entities engage one of its shareholders as a costly financial "cash flow consultant." This was perplexing, as the Moon Entities' cash flow status has been largely unchanged and their financial statements were already subject to review and audit by a third-party CPA under the terms of the Line of Credit. The Moon Entities offered to engage their financial consultant, Joe Klinger, and alternatively encouraged Kore to engage a cash flow consultant at Kore's own expense. Kore refused both suggestions, accused the Moon Entities of overdrawing and defaulting on the Line of Credit, purported to terminate the Line of Credit, and refused to fund future advances. Kore threatened to notify the Moon Entities' existing secured lenders and its customers of the alleged default under the Line of Credit. Kore also continued to insist that Moon Entities' customers make payment for services directly to Kore — **rendering the Moon Entities unable to pay their ordinary course debts, including recurring payroll.** The Moon Entities require cash on hand to run their day-to-day operations, service customers, pay employee payroll and sub-contractors, maintain equipment, purchase inventory and manage their large pool of total customer receivables.

If Kore refused to fund the next draw on the Line of Credit on July 10, 2021 as anticipated, the Moon Entities would not to be able to make their payroll obligations, and would default on the StoneMor Agreement. Therefore, the Moon Entities asked StoneMor to pay its upcoming invoice directly to Moon Site Management instead of to Kore. On July 15, 2021, Kore instructed StoneMor via e-mail to make its payment to Kore, and not to the Moon Entities. [Adv. D.I. 12-3 ("[p]ayment to any other party will not relieve Stonemor [sic] of its obligation to Kore.")]. On July 16, 2021, counsel for Kore issued a purported Notice of Default to the Moon Entities. [Adv. D.I. 12-4].

Kore's default declaration was based upon its erroneous conclusion that the Moon Entities were overdrawn or overadvanced. The Revolving Credit and Security Agreement and the June 28, 2021 Waiver/Loan Modification Agreement unambiguously indicate that if Kore funds a requested advance in excess of the then Credit Limit, that Kore has increased the Credit Limit, rather than made an over advance. Conversely, an Overadvance (as defined in the Line of Credit) only occurs if a draw was *inadvertently* or *erroneously* funded in excess of then existing Credit Limit, and then only if Kore demands repayment. [Adv. D.I. 12-1 at § 2.3 and 2.9; Adv. D.I. 12-5]. From the Moon Entities' perspective, Kore's refusal to fund the Line of Credit prior to any payment by StoneMor to Moon Site Management constituted a material default, and relieved the Moon Entities of further performance obligations thereunder.

On July 23, 2021, Kore filed a complaint in confession of judgment against the Moon Entities, as well as a receivership action against the Moon Entities, seeking installation of its shareholder – previously foisted upon the Moon Entities as a proposed "cash flow consultant" – as receiver, despite the fact that the Line of Credit only gives Kore an interest in the Moon Entities' accounts receivable, and despite Kore's status a junior lender secured only by the Moon Entities' accounts receivable. Kore also filed a separate confession of judgment action against John Pursell in his individual capacity in Maryland, as well as a suit alleging breach of the StoneMor Agreement (to which Kore is not a party) first in the Court of Common Pleas of Bucks County, Pennsylvania, and then in United States District Court for the Eastern District of Pennsylvania. [Adv. D.I. 12-7]. Kore also attempted to obstruct delivery of the Moon Entities' mail by willfully making a fraudulent misrepresentation to the Chesapeake City postmaster, in violation of 18 U.S.C. §§ 1701 and 1708.

In order to protect their centuries-old business, the Moon Entities filed a Chapter 11 petition before the Court, allowing the Moon Entities to continue operations during reorganization to address the debt they owe under the Kore Line of Credit facility. The Maryland receivership action against the Moon Entities was accordingly stayed. On September 15, 2021, the Court entered an Order authorizing interim Debtor-in-Possession Financing ("DIP Financing"), and requiring the Moon Entities to turn over the proceeds of the DIP Financing to satisfy the principal and interest due on the Kore Line of Credit. On September 17, 2021, the Moon Entities paid Kore $5,455,456.13 from their initial draw against the DIP Financing. This payment represented the totality of the principal and interest due to Kore on the Line of Credit. Despite repayment by the Moon Entities, Kore refused to withdraw or stay its complaint against StoneMor, and instead stalwartly claims costs and fees against the Moon Entities.

In the Amended Complaint, Plaintiff pleads claims for breach of contract, breach of implied duty of good faith and fair dealing, tortious interference with contract, common law fraud, fraudulent misrepresentation, promissory estoppel and violation of the automatic stay. Kore moved for judgment on the pleadings with respect to the Amended Complaint on March 2, 2022. The motion was granted as to seven of the eight counts of the Amended Complaint. [Adv. D.I. 81]. With respect to Count VII, alleging that Kore's post-petition pursuit of StoneMor violates the automatic stay under Section 632 of the Bankruptcy Code, the Court found "as a matter of law that Kore did not violate the automatic stay by pursuing its contractually granted claims against StoneMor." [Adv. D.I. 80 p. 36]. But because "it is plausible that Kore's pursuit of the Excess Estate Funds is a violation of the automatic stay," the Court denied the motion for judgment on the pleadings "as to Count VII as to the Excess Estate Funds and will not dismiss Count VII of the Amended Complaint as a matter of law." [Adv. D.I. 80 pp. 36-37].

## LEGAL ARGUMENT

### A. Standard of Review.

The District Court has jurisdiction to hear appeals "with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(3). Section 158(a) does not identify the standard district courts should use in deciding whether to grant such an interlocutory appeal. *In re Maxus Energy Corp*., 611 B.R. 532, 538-539, (D. Del. 2019). "Typically, however, district courts follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals." *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011).

Under the standards of § 1292(b), an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question of law upon which there is (2) substantial ground for difference of opinion as to its correctness, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp*., 496 F.2d 747, 754 (3d Cir. 1974). Entertaining review of an interlocutory order under § 1292(b) is appropriate when the party seeking leave to appeal "establishes exceptional circumstances [to] justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. & Hudson Ry. Co.,* 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989).

### B. Controlling Question of Law.

"A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *In re BSA*, 2021 U.S. Dist. LEXIS 58837, *13-14, 2021 WL 1174573 (D. Del. March 29, 2021)(citing and quoting *Katz*, 496 at 755).

"'[C]ontrolling' means serious to the conduct of the litigation, either practically or legally. And on the practical level, saving of time of the district court and of expense to the litigants [has been] deemed ... to be a highly relevant factor." *Id.* (internal citation omitted). "The 'controlling question of law' also must be one as to which there is 'substantial ground for difference of opinion.' This calls for more than mere disagreement with the ruling of the bankruptcy court." *Id.* (citing 28 U.S.C. § 1292(b)." To satisfy this standard, "the difference of opinion must arise out of genuine doubt as to the correct legal standard." *Id.* (citations omitted).

The question of law raised by the Court's Order and Opinion on Kore's motion for judgment on the pleadings is specific to cases involving a "lock box" line of credit, in which the borrower's receivables are paid over to the lender. The question is whether a lender under those circumstances legally has unfettered discretion to exit the lockbox line of credit, or whether the lender has an obligation provide the borrower with reasonable notice and opportunity to refinance the debt. Whether the lender's obligation is couched as separate from or infused within the parties' contract is of no moment. **The question is whether an obligation unique to the specific case of a lockbox line of credit exists**. The Court did not examine this question, and it is appropriate for determination on appeal.

The Court examined and applied the language contained in the Moon Entities' Line of Credit, but dismissed out of hand the principle embraced by other courts to address the question that a lockbox financing arrangement – which uniquely enables the lender to drain the borrower of all liquid capital – is suffused with a duty on the part of the lender to maintain the lending relationship while the borrower obtains alternate financing. Case law was presented by Plaintiff requiring a lockbox lender to treat the borrower fairly and in good faith. A national search of applicable case law reveals that the very few times a court has considered a line of credit involving

a lockbox, the court has imposed upon the lockbox lender an obligation not to exit the line of credit without notice. Instead, the few cases addressing the unique instant lockbox line of credit loan require the lender to give the borrower a window in which to refinance, because the lender controls the borrowers liquid assets.

Specifically, Plaintiff raised *K.M.C. Co. v. Irving Tr. Co.*, 757 F.2d 752, 759 (6th Cir. 1985), *Quality Automotive Co. v. Signet Bank/Maryland,* 775 F. Supp. 849, 853 (D. Md. 1991), and *In re Bailey Tool & Mfg. Co.*, No. 16-30503-SGJ-7, Adv. No. 16-03025-SGJ, 2021 Bankr. LEXIS 3502, 2021 WL 6101847 (Bankr. N.D. Tex. Dec. 23, 2021). In those cases, courts confronted with "lock box" line of credit lender agreements held that a good faith standard limits the lender's discretion to cut off the financial lifeline of funding advances. Instead of adopting and applying the principles announced in cases similar to the instant case, the Court applied holdings from cases involving typical term loans, which are inapposite.

In its holding, the Court distinguished *K.M.C.* on the grounds that Maryland law does not create fiduciary obligations between debtor and creditor. [Adv. D.I. 80 p. 15]. This is a distinction without a difference, as Plaintiff's argument that Kore should be required to deal with the Moon entities in good faith need not necessarily implicate a lender's fiduciary duty. A lockbox lender's obligation to treat a borrower fairly can be infused into the parties' contract, as the implied duty of good faith and fair dealing read into every contract under Maryland law, because of the harm that would result from not imposing such an obligation on the lender. Indeed, the United States Court of Appeals for the Sixth Circuit held that without intervention, the lock box arrangement "would leave *K.M.C.'s* continued existence entirely at the whim or mercy of [the lender], absent an obligation of good faith performance." 757 F.2d at 754. "[T]his obligation to act in good faith

would require a period of notice to [the borrower] to allow it a reasonable opportunity to seek alternate financing . . ." *Id.*

The Court dismissed out of hand Plaintiff's argument that the "lock box" line of credit in both *K.M.C.* and the case at bar triggers an enhanced level of care by the lender. [Adv. D.I. 80 pp. 15-16]. The Court also refused to entertain the import of Kore's complete control over all of the Moon Entities' working capital – whether in the form of lent funds or accounts receivable – simply because, according to the Court, "Kore had a first-priority lien on the accounts receivable." [Adv. D.I. 80 p. 15]. This conclusory conflation of fact and law does not distinguish the *K.M.C.* case, and instead begs the question posed by the instant motion: is the correct legal standard one which enhances a lockbox lender's ability to ruin a borrower? Plaintiff says no, and urges this Court to certify this case for interlocutory appeal in order to permit the District Court to weigh in.

The Court also disregarded both *K.M.C.* and *Quality Automotive* based on their abrogation by the United States Court of Appeals for the Fourth Circuit in *Marland v. Safeway, Inc.,* 65 Fed. Appx. 442 (4th Cir. 2003). [Adv. D.I. 80 p. 17]. In *Quality Automotive*, the District Court rejected a motion to dismiss for failure to state a claim in a lockbox line of credit case where breach of contract was not established, because " the defendant still had a duty to exercise good faith with regard to notice when deciding to terminate the loan and security agreement." 775 F. Supp. at 853. While the *Marland* court "held that under Maryland law, there is no separate cause of action for breach of the duty of good faith and fair de aling," it did not undermine the underlying determination of lenders' duties to borrowers in the context of lockbox lines of credit in *Quality Automotive* and *K.M.C.*. 65 Fed. Appx. at 449.

The Court also distinguished *Bailey Tool* on the basis that "the lender, under a factoring agreement, was a result of [sic] grossly overreaching conduct that was not authorized under the

contract. The Court finds that *In re Bailey Tool & Mfg. Co.* is not persuasive precedent in [sic] the facts and circumstances of the matter before the Court (i.e. interpreting Louisiana law, interpreting a factoring agreement, and factual differences)." [Adv. D.I. 80 p. 17 fn.52]. The Court ignored the fact that Maryland and Louisiana law do not conflict in any meaningful way for the purposes of this case. Specifically, "[u]nder Louisiana Law, '[c]ontracts must be performed in good faith.'" 2021 Bankr. LEXIS 3502, *118-119 (citing and quoting La. Civ. Code Ch. 8, Sec. 1, Art. 1983; *Grisaffi v. Dillard Department Stores, Inc*., 43 F.3d 982, 983 (5th Cir. 1995)("Good faith performance is an implied requirement of every contract under Louisiana law.")). Similarly, "[u]nder Maryland law, a duty of good faith and fair dealing is an implied term in certain contracts . . ." [Adv. D.I. 80 p. 17 (citing and quoting *Parker v. Columbia Bank*, 604 A.2d 521, 531 (Md. Ct. Spec. App. 1992))].

The factual parallels of the *Bailey Tool* case and the instant matter are also compelling: like Moon Industries, Bailey's factoring loan involved both discretionary draws and a lockbox arrangement for accounts receivable.[4] The Court simply overlooked that, in all material respects, Bailey's financing arrangement was identical to Moon Industries' lockbox line of credit. And the lender's bad acts in *Bailey Tool* do not undermine or distinguish the court's holding in that case. The Court's holding was based on the fact that the lending agreements "are amazingly one-sided. In fact, they are so one-sided . . . [that] many of the alleged bad acts articulated by the Trustee were seemingly permitted by the terms of the Agreements." 2021 Bankr. LEXIS 3502, *106. This

[4] "Even though the relationship between the Company and Republic has often been referred to as a factoring arrangement, there was definitely a traditional lending component to the arrangement. The Inventory Loan Agreements were, according to their terms, each intended to be a revolving line of credit for the Company's working capital under which Republic might make advances from time to time. TR 54-56 (Section 2.1). Republic's "Collateral" was to be not merely "Inventory," wherever located, but general intangibles, accounts, and proceeds. It was contemplated that the Company could request borrowing ("advances") by providing a request to Republic." *In re Bailey Tool & Mfg. Co*., No. 16-30503-SGJ-7, Adv. No. 16-03025-SGJ, 2021 Bankr. LEXIS 3502, *18, 2021 WL 6101847 (Bankr. N.D. Tex. Dec. 23, 2021).

conclusion is where this Honorable Court's assessment of the Moon Entities' Line of Credit began and ended. This Court held that the "sole discretion" language in the Line of Credit allows unfettered power over the viability of a debtor. But the *Bailey Tool* court pushed ahead. The court's determination that the lender breached the implied duty of good faith and fair dealing was based mostly in the lender's destruction of the borrower's business.[5] 2021 Bankr. LEXIS 3502, *122.

The Court's decision to ignore the parallel facts, comparable applicable state law and unassailable logic of the holdings in *K.M.C.*, *Quality Automotive* and *Bailey Tool*, and to allow borrowers' business existences to rise or fall on the whims of their unscrupulous lender, presents a question of law that controls the outcome of this dispute. By adopting Kore's argument that it has *unfettered* discretion to make advances while controlling all liquid assets of the borrower, free from any obligation to proceed in good faith, the Court's decision stands alone among courts that have addressed lockbox line of credit arrangements. Plaintiff has therefore satisfied the first prong of the Section 1292(b) standard for interlocutory appeal.

**C. There is Substantial Ground for Difference of Opinion.**

The second prong of the Section 1292(b) standard for interlocutory appeal asks whether substantial ground for difference of opinion exists as to the correctness of the Court's Order. 28 U.S.C. § 1292(b); *Katz*, 496 F.2d at 754. As no other court in this District has addressed the comportment required of a lender in the context of a lockbox line of credit, "[t]his Court sails on uncharted waters in fashioning a solution to the problem in this case. It would blink at reality to deny that there is substantial ground for a difference of opinion with regard to the Order entered today . . ." *In Re W.R. Grace & Co.,* 285 B.R. 148, 162 (Bankr. D. Del. 2002). Plaintiff has pointed

[5] The lender's over-collection and wrongful withholding of funds – facts not relevant to the case at bar – contributed in a small way to the court's conclusion with regard to the duty of good faith and fair dealing. 2021 Bankr. LEXIS 3502, *122.

to three other jurisdictions that have imposed a duty of care on lockbox lenders; this Court stands alone among jurists who have addressed the matter in refusing to impose a duty of care on lockbox lenders. As this represents substantial grounds for difference in opinion, Plaintiff has satisfied the second prong of the Section 1292(b) standard for interlocutory appeal.

**D. Interlocutory Appeal Would Materially Advance the Litigation.**

The third prong of the Section 1292(b) test for interlocutory appeal asks whether an immediate appeal might materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *Katz*, 496 F.2d at 754. "Of the three factors for interlocutory appeal under § 1292(b), 'courts place particular weight on whether immediate appeal will materially advance the ultimate termination of the litigation.'" *In re Essar Steel Minn. LLC*, 2022 U.S. Dist. LEXIS 128522, *9, 2022 WL 2828849 (D. Del. July 20, 2022)(citing and quoting *In re Paragon Offshore PLC*, 2020 U.S. Dist. LEXIS 62552, 2020 WL 1815550, at *3 (D. Del. Apr. 9, 2020) (internal quotations marks omitted)). "An interlocutory appeal materially advances litigation if it '(1) eliminates the need for trial, (2) eliminates complex issues so as to simplify the trial, or (3) eliminates issues to make discovery easier and less costly.'" *In re TK Holdings*, 2021 U.S. Dist. LEXIS 161579, *9, 2021 WL 3796878 (D. Del. Aug. 26, 2021)(citing and quoting *In re Paragon Offshore PLC*, 2020 U.S. Dist. LEXIS 62552, 2020 WL 1815550, at *3 (D. Del. Apr. 9, 2020)(internal citations omitted)).

The Court's Order eliminated Counts I through VI and Count VIII of the Amended Complaint, leaving Count VII and Kore's counterclaims for trial. [Adv. D.I. 81]. The Court eliminated Plaintiff's claims for breach of contract, breach of the implied duty of good faith and fair dealing, tortious interference with contract, common law fraud, fraudulent misrepresentation and promissory estoppel. Trial on Count VII of the Amended Complaint will only determine

whether Kore's pursuit of the Excess Estate Funds violated the automatic stay, and whether Kore is owed additional fees by the Moon Entities. But litigating these issues is impractical if the Court's underlying judgment on the pleadings with respect to Counts I-VI and VIII is subsequently overturned on appeal; in that instance, even if Kore were successful on its counterclaims, any such success is subject to eventual appeal from the instant Opinion and Order. Finality can be obtained at this change through certification of the instant motion for leave. Here, as in in *W.R. Grace*, "finality is too important a consideration for the parties to delay an appellate ruling [and] the necessity of a re-trial following a reversal and remand would be an unconscionable waste of the assets of the" business. 285 B.R. at 162-163. As such, Plaintiff has satisfied the third prong of the Section 1292(b) test for interlocutory appeal, and the instant Motion should be granted.

## CONCLUSION

For all of the foregoing reasons, the Trustee respectfully requests leave to file an interlocutory appeal from this Court's Order and Opinion dated September 30, 2022 granting Kore's Motion for Judgment on the Pleadings as to Counts I-VI and VIII of the Amended Complaint.

Dated: October 14, 2022

**ASHBY & GEDDES P.A.**

*/s/ Gregory A. Taylor*
Ricardo Palacio (DE Bar No. 3765)
Gregory A. Taylor (DE Bar No. 4008)
500 Delaware Avenue
P.O. Box 1150
Wilmington, Delaware 19899
Tel: 302-654-1888
Email(s): RPalacio@ashbygeddes.com
GTaylor@ashbygeddes.com

*Counsel to Don A. Beskrone, as Chapter 7 Trustee of Moon Group, Inc., et al.*

-and-

Philip S. Rosenzweig
William C. Katz
**SILVERANG, ROSENZWEIG**
**& HALTZMAN, LLC**
Woodlands Center
900 E. 8th Avenue, Suite 300
King of Prussia, PA 19406
Tel: (610) 263-0115
Email(s): PRosenzweig@sanddlawyers.com
WKatz@sanddlawyers.com

*Special Litigation Counsel to Don A. Beskrone, as Chapter 7 Trustee of Moon Group, Inc., et al.*